IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

SHERILL A. RICKETTS                                                          PLAINTIFF

v.                              Civil No. 10-3043

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                          DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Sherill Ricketts, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for supplemental insurance ("SSI") under Title XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

## I.      Procedural Background:

The plaintiff filed her application for SSI on June 14, 2004[1], alleging disability due to arteriovenous malformation ("AVM") of the brain[2], headaches, high blood pressure, kidney disease, arthritis, stomach ulcers, macular degeneration of the eye, and slow learner intellect. Tr. 13-14, 100-103, 131, 140-141, 158, 165, 177, 178. On January 24, 2006, an Administrative Law Judge issued a favorable decision based on the evidence found in the record. Tr. 11, 60-65.

---

[1] Plaintiff had filed a prior application for SSI as a disabled child on May 25, 2998. Tr. 11. This claim was allowed, but following a continuing disability review, her benefits ceased as of August 1, 2002. This decision was appealed to the Appeals Council, but ultimately denied on February 10, 2005. Tr. 37-50, 75-77.

[2] A brain AVM is a congenital abnormality in the connection between the arteries and veins in the brain. *See* Mayo Foundation for Medical Education and Research, *Brain AVM (arteriovenous malformation)*, *at* www.mayoclinic.com (March 22, 2011). Many people are unaware of the abnormality until they experience headaches or seizures, and in serious cases, blood vessels can rupture resulting in a brain hemorrhage.

A pre-effectuation review, however, disagreed with his findings and referred her case to the Appeals Council for review.  Tr. 66-70.  On May 11, 2006, the case was remanded for further proceedings and the ALJ was directed to obtain additional evidence, properly evaluate the overall evidence of record, offer the claimant a new hearing, and issue a new decision.  Tr. 83-91.

On June 20, 2007, a new administrative hearing was held.  Tr. 422-461.  Plaintiff was present and represented by counsel.   At this time, plaintiff was 36 years of age and possessed a high school education and an Associate's Degree in nursing.  Tr. 427-428.  She had past relevant work ("PRW") experience as a Licensed Practical Nurse.  Tr. 132, 150-151, 428-431.

On November 30, 2007, the ALJ found that plaintiff's AVM, headaches, and slow learner intellect were severe, but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  Tr. 13-14.  After partially discrediting plaintiff's subjective complaints, the ALJ determined that plaintiff retained the residual functional capacity ("RFC") to lift and/or carry less than 15 pounds frequently; 15 pounds occasionally; sit, stand, and/or walk for a total of six hours each in an eight-hour workday with normal breaks; occasionally stoop, crouch, and crawl; never climb scaffolds, ladders, or ropes due to equilibrium problems; avoid exposure to unprotected heights, dangerous equipment, and machines; and, perform only work involving non-complex, simple instructions where superficial contact is incidental to the work with the public/co-workers and work is learned by rote with few variables and with supervision that is concrete, direct, and specific.  Tr. 14-18.  With the assistance of a vocational expert, the ALJ found plaintiff could perform work as a driver and assembly worker. Tr. 19.

AO72A
(Rev. 8/82)

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on April 19, 2010.  Tr. 3-6.  Subsequently, plaintiff filed this action.  ECF No. 1.  This case is before the undersigned by consent of the parties.  Both parties have filed appeal briefs, and the case is now ready for decision.   ECF No. 8, 9.

## II.     Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results

from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

III.    **Discussion:**

Before addressing the evidence, the Court deems it important to note that the relevant time period in this case is limited. SSI may not be granted prior to a claimant's application filing date, because benefits through an SSI application are allowed only after all regulatory criteria are established, namely after the SSI application is filed. *See* 20 C.F.R. § 416.335; *Jernigan v. Sullivan*, 948 F.2d 1070, 1072 n. 3 (8th Cir. 1991). Therefore, plaintiff must prove that her disability commenced on or after June 14, 2004, her alleged onset date, and continued through the date of the ALJ's decision.

4

After a thorough review of the record, the undersigned is troubled by the ALJ's failure to clarify the RFC assessment of Dr. K. Simon Abraham, the only examining doctor to complete an RFC assessment.  We believe that remand would assist the ALJ in resolving the apparent conflict in Dr. Abraham assessment.

The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC.  *Krogmeier v. Barnhart*, 294 F.3d 1019, 1023 (8th Cir. 2002).  "The opinions of non-treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial evidence on the record as a whole.  *Shontos v. Barnhart,* 328 F.3d 418, 427 (8th Cir. 2003).  While there are circumstances that may warrant reliance on the RFC assessment of a non-treating, non-examining consultant, this case does not present such an instance.  *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010).

We note that Plaintiff has a history of treatment for AVM of the brain, headaches, back and hip pain, kidney stones with left and right-sided pain, gastritis, urinary tract infections, TMJ, and dysmenorrhea.  Tr. 186-200, 270-298, 296-298, 306-324, 356.  She reportedly had a stroke at the age of 18, at which point her AVM was discovered.  She then underwent surgeries for this in 1988, 1989, and 1992.  Tr. 212, 360-410.  Plaintiff indicated that one aneurysm remained, resulting in daily headaches, some of which were incapacitating, and residual problems with her equilibrium and vision.  Tr. 440-444.  It was not, however, recommended that she undergo surgery for this aneurysm unless it began to bleed, due to the depth and location of the aneurysm.  Plaintiff also had only one working kidney.  Tr. 210.  One kidney reportedly atrophied when she was young.  Tr. 431.  Due to magnesium and calcium issues, Plaintiff had undergone four kidney

surgeries on her existing kidney, as well as three lithotripsy and stent placement procedures to eliminate kidney stones.  Tr. 212, 326-341, 432.  As a result, Plaintiff stated that she was consistently prescribed antibiotics to treat kidney stones and urinary tract infections.  Tr. 441.

On October 5, 2005, Plaintiff underwent a general physical exam with Dr. K. Simon Abraham.  Tr. 215-221.  She claimed disability due to equilibrium problems, migraine headaches, difficulty concentrating, and a brain aneurysm.  Plaintiff also reported a history of kidney surgery and kidney stones.  Dr. Abraham noted that she exhibited no equilibrium problems during the evaluation, was rather obese, seemed intelligent, and had good recall of past and recent events.  No range of motion limitations, clubbing, cyanosis, muscle spasm, joint abnormalities or deformities, muscle atrophy, or neurological deficits were noted.  He did, however, find Plaintiff to exhibit an 80% grip strength in her left hand.  X-rays of her lumbar spine were essentially unremarkable, with the exception of a calcified opacity that Dr. Abraham thought could be significant, given her history of renal stones.  He diagnosed her with equilibrium problems resulting from her history of brain aneurysm, migraine headaches, difficulty concentrating, a history of kidney stones, and pain in the right hip and lower back.  On a medical assessment he completed the same day, Dr. Abraham indicated that Plaintiff's standing and/or walking and sitting would not be affected by her impairment, but stated she could walk only one hour because of lower back pain and sit four to six hours as along as she was able to move often.  He also found her able to occasionally stoop, crouch, and crawl and frequently climb and balance.  Dr. Abraham also stated that Plaintiff should avoid heights and moving machinery.  Tr. 215-224.

AO72A
(Rev. 8/82)

The ALJ discounted Dr. Abraham's assessment due to his statement that Plaintiff's impairments did not impact her ability to sit, stand, or walk. She bolstered her decision with the fact that Dr. Abraham's examination failed to reveal any range of motion deficits and that x-rays of Plaintiff's hip were normal. However, as previously indicated, the medical evidence shows that Plaintiff had a long-standing history of kidney stones and urinary tract infections, resulting in significant back pain and for which she was prescribed strong pain medications. The x-rays taken by Dr. Abraham even revealed a calcified opacity he thought could be significant, given her history of renal stones.

Additional treatment records dated before and after Dr. Abraham's examination further bolster Plaintiff's complaints of back pain related to her kidney disease. On September 8, 2004, Plaintiff complained of back pain and pain on urination, along with mid-epigastric pain and dark tarry stools. Tr. 212-213. Plaintiff was concerned about the possibility of another kidney stone. Sandra Marcy, an Advanced Practical Nurse, prescribed Cipro, Hydrocodone, and Protonix. She also noted that Plaintiff had a history of TMJ, for which she had been prescribed Tizanidine, and increased Plaintiff's dosage of this medication. Tr. 212-213.

On June 1, 2005, Plaintiff was treated for back pain, which she rated as an eight on a 10-point scale. Tr. 269. The doctor noted that she walked guardingly, and tenderness was noted in her lower lumbar area. The doctor diagnosed her with lower back pain. She was prescribed Hydrocodone and Flexeril. Tr. 269.

On August 21, 2005, her Flexeril prescription was renewed. Tr. 269.

On October 28, 2005, Plaintiff complained of back and hip pain. Tr. 268. She also requested a urine analysis. Her left eye was also swollen. The doctor diagnosed her with lower

7

back pain and cellulitis of the left eyebrow. He administered Rocephin injections and prescribed Cephalexin and Tramadol. Tr. 268.

On August 9, 2006, Plaintiff was evaluated by Dr. Max Ferguson, a urologist, regarding her history of kidney stones. Tr. 248. At this time, she was having a lot of recurrent right-sided flank pain and some left lower quadrant pain. An x-ray of the kidneys, ureters, and bladder ("KUB") showed a mid-to-lower pole stone mass on the right. Tr. 257-259. This was confirmed by CT scan, showing bilateral small stones, no hydronephrosis, a left pelvic calcification not likely to be a stone, and a left ovarian cyst. Dr. Ferguson recommended a cysto with right ureteral stent followed by right extracorporeal shock wave lithotripsy ("ESWL"). Tr. 248, 302-304.

On August 15, 2006, Plaintiff underwent a cystoscopy with right stent placement and ESWL. Tr. 256, 300-301. She tolerated the procedure well. Tr. 256.

On August 17, 2006, Plaintiff had experienced nausea and vomiting following the ESWL, but this had improved. Tr. 246. It was believed to be associated with the anesthesia. A pre-appointment CT scan showed good position of the stone. Tr. 255. She had bilateral stone fragments, but no hydronephrosis. Dr. Ferguson found her to be clinically improved and prescribed Zofran to be taken as needed for the nausea and vomiting. Plaintiff was also encouraged to continue forcing fluids. Tr. 246.

On August 24, 2006, Plaintiff requested Percocet for pain. Tr. 266. Records indicate that her stent was currently in place. Her request was granted. Tr. 266.

On August 28, 2006, Plaintiff had excellent results following her recent ESWL. Tr. 244. Her KUB revealed that the stent was in good position with a few tiny fragments noted in the

8

lower portion of the right kidney.  Tr. 254.  No stones were noted along the stent.  Plaintiff did report some recent bladder cramping and spasm for which she was prescribed Urogesic Blue. Dr. Ferguson removed the stent and advised her to return for follow-up in six weeks.  Tr. 244-245.

On March 12, 2007, Plaintiff reported recent left flank pain with nausea and urinary urgency and frequency.  Tr. 243.  She thought she might have passed a kidney stone.  A KUB and CT scan were ordered.  Dr. Ferguson prescribed Mepergan and another medication.  Tr. 243.

On March 20, 2007, Plaintiff had been unable to get her image studies done the previous week, due to her daughter's illness.  Tr. 242.  Dr. Ferguson noted that she was clinically improved at this time.  Plaintiff had required some Percocet the previous week, but this seemed to be due to the fact that she was unable to obtain her Mepergan due to non-coverage by her insurance.  She had undergone a KUB and a CT scan that day, and was interested in proceeding with treatment of her stones as needed.  A urinalysis revealed occasional white cells, rare red cells, but no bacteria.  KUB films revealed stones in the left kidney, while the CT scan revealed bilateral stones.  Tr. 252-253.  There appeared to be a lateral scar on the right side and stones in the left renal pelvis on the left side.  Their appearance had changed from previous studies. Plaintiff indicated she had not been undergoing any treatment, rather had been drinking lemon water.  Dr. Ferguson diagnosed Plaintiff with non-obstructing stones.  She recommended Plaintiff proceed with ESWL.  Plaintiff was given Percocet to treat her pain until her procedure could be scheduled for the following week.  Tr. 242.

On May 16, 2007, Plaintiff returned to have her blood pressure checked.  Tr. 352.  She was reportedly taking Lisinopril daily.  Plaintiff also stated that she felt like she was getting a

AO72A
(Rev. 8/82)

bladder infection, and reported some sore spots on her head.  Plaintiff was diagnosed with hypertension and her Lisinopril prescription refilled.  However, the remainder of the doctor's notations are illegible, although it does appear that a renal diagnosis of some sort was made.  Tr. 352.

On August 3, 2007, Plaintiff was prescribed Macrobid for a urinary tract infection.  Tr. 416.  At this time, an antinuclear antibody screen was positive and her rheumatoid factor also registered high.  Tr. 417.

On August 20, 2007, Plaintiff was treated for pain in her joints.  Tr. 415.  It appears as though Plaintiff was diagnosed with muscle spasm, a urinary tract infection, and joint pain.  She was prescribed Robaxin Macrobid, and Tylenol.  The remainder of the doctor's handwriting is difficult to discern.  Tr. 415.

Given the fact that the record does support Plaintiff's contention of back pain resulting from recurrent kidney stones and frequent urinary tract infections, we believe remand is necessary to allow the ALJ to seek clarification of Dr. Abraham's assessment.  *Stormo* v. *Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) (ALJ is required to seek additional clarifying statements from a treating physician when a crucial issue is undeveloped).  Additionally, since Dr. Abraham's evaluation was conducted in 2005, more than two years prior to the ALJ's opinion and Plaintiff has sought significant treatment for her kidney problems since that date, on remand, the ALJ should also obtain an RFC assessment from Dr. Ferguson, Plaintiff's treating urologist.  Inquiry should also be made regarding the significance, if any, of Plaintiff's positive antinuclear antibody screen and elevated rheumatoid factor.  If an assessment can not be obtained

10

from Dr. Ferguson, then Plaintiff should be referred to a urologist for a consultative examination complete with an RFC assessment.

## IV.    Conclusion:

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 24th day of March 2011.

/s/ J. Marschewski
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

11